UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| NOEMI TROCHEZ, | : | CASE NO. 20-70785-BEM |
| | : | |
| Debtor. | : | |
| | : | |
| MICHAEL J. BARGAR, Chapter 7 trustee for the Bankruptcy Estate of Neomi Trochez, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Adv. Pro. No. _____ |
| | : | |
| ROCKET MORTGAGE, LLC f.k.a. QUICKEN LOANS, LLC and NOEMI TROCHEZ, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

COMES NOW Michael J. Bargar, as Chapter 7 Trustee ("**Trustee**" or "**Plaintiff**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Noemi Trochez ( "**Debtor**"), by and through undersigned counsel, and files this Complaint (the "**Complaint**") against Rocket Mortgage, LLC *f.k.a.* Quicken Loans, LLC ("**Rocket**") and Debtor (together, the "**Defendants**").

### Jurisdiction, Venue, and Parties

1.

This adversary proceeding is initiated pursuant to Rule 7001(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and 11 U.S.C. §§ 105, 362, 549, 550, and 551.

17894125v1

2.

This Court has jurisdiction of the subject matter of this proceeding under 28 U.S.C. §§ 157 and 1334 because the claims asserted herein arise under Title 11 of the United States Code (the "**Bankruptcy Code**").  Defendants are subject to the jurisdiction of this Court.

3.

This adversary proceeding arises in and relates to the Chapter 7 bankruptcy case *In re Noemi Trochez*, Case No. 20-70785-BEMBEM (the "**Case**" or "**Bankruptcy Case**"), pending in the Northern District of Georgia, Atlanta Division.

4.

This Complaint is a core proceeding pursuant to 28 U.S.C. §157.

5.

Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a) because Debtor's case is pending in this district and this division.

6.

Trustee consents to the entry of final orders or judgment by the Bankruptcy Court.

**Statement of Facts**

***a. General Background Facts***

7.

Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code on October 15, 2020 (the "**Petition Date**") and initiated the Bankruptcy Case.

8.

Shortly thereafter, Trustee was appointed to the Bankruptcy Case as interim Chapter 7 Trustee under 11 U.S.C. § 701(a)(1).

17894125v1

9.

At the conclusion of the Chapter 7 meeting of creditors, conducted in accordance with 11

U.S.C. § 341(a) on November 16, 2020, Trustee became the permanent Chapter 7 Trustee under

11 U.S.C. § 702(d).

### b. The Property

10.

By virtue of a *Joint Tenancy with Right of Survivorship Warranty Deed* (the "**Warranty**

**Deed**") dated October 9, 2014, Debtor and Melvin Trochez ("**Mr. Trochez**") acquired joint

ownership interest in that certain real property commonly known as 95 Chandler Ridge Lane,

Lawrenceville, Gwinnett County, Georgia 30045 (the "**Property**").  The Warranty Deed was

filed and recorded on the real property records with the Clerk of the Superior Court of Gwinnett

County, State of Georgia (the "**Real Estate Records**") on October 21, 2014, beginning at page

741 of Deed Book 53189.

### c. The Bankruptcy Estate's Property Interest

11.

As of the Petition Date, the Debtor and Mr. Trochez jointly owned the Property.

12.

Debtor's undivided one-half interest in the Property is property of the Bankruptcy Estate

(the "**Bankruptcy Estate's Property Interest**").

13.

Upon information and belief, both Debtor and Mr. Trochez reside at the Property.

17894125v1

### d. Pre-Petition Liens and Encumbrances against the Property and the First Adversary

14.

Plaintiff obtained a full title examination of the Property effective December 9, 2020 (the "**Title Report**").

15.

As reflected in the Title Report, Debtor and Defendant executed a *Security Deed* dated October 10, 2014 in the original principal amount of $152,192.00 (the "**Original Security Deed**"), pledging the Property to Movement Mortgage LLC ("**Movement**"). The Original Security Deed was filed and recorded on the Real Estate Records on October 21, 2014, beginning at page 742 of Deed Book 53189.

16.

The Title Report reflected no other security deeds on the Property.

17.

Upon information and belief, there were no other encumbrances against the Property, other than the Original Security Deed.

18.

The value of the Property is approximately $392,000.00

19.

A sale of Mr. Trochez's interest in the Property would benefit the Bankruptcy Estate and provide a meaningful distribution to Debtor's creditors.

20.

On March 3, 2022, Trustee filed a *Complaint* (the "**Complaint**") against Mr. Trochez to, among other things, sell Mr. Trochez's interest in the Property pursuant to 11 U.S.C. §363(h) and initiated the adversary proceeding styled as *Bargar v. Melvin Trochez* (Adv. Pro. No. 22-05051-BEM) (the "**First Adversary Proceeding**").  *See* [Doc. No. 20 and Adv. Pro. No. 1].

21.

Trustee served Mr. Trochez with the Complaint.  *See* [Adv. Pro. No. 3].

22.

The First Adversary Proceeding remains pending.

### e. The Notice of Bankruptcy Filing

23.

On December 4, 2020, Trustee caused a notice of bankruptcy filing (the "**Bankruptcy Notice**") to be recorded in the Real Estate Records beginning at page 750 of Deed Book 58134.

24.

The Bankruptcy Notice remains in the Real Estate Records and includes notice of Debtor's Chapter 7 petition.

25.

A true and correct copy of the Bankruptcy Notice is attached hereto and incorporated herein by reference as Exhibit "A."

26.

### f. The Unauthorized Post-Petition Transfer of a Security Interest in the Property

27.

On February 9, 2022, after the Petition Date, Debtor and Mr. Trochez executed a *Security*

17894125v1

*Deed* (the "**Post-Petition Transfer**") in the original principal amount of $277,777.00 (the "**New Security Deed**"), pledging the Property to Rocket.

28.

The New Security Deed was filed and recorded on the Real Estate Records on February 14, 2022 beginning at page 580 of Deed Book 59690.

29.

A true and correct copy of the New Security Deed is attached hereto and incorporated herein by reference as Exhibit "B."

30.

A *Cancellation of Deed to Secure Debt* (the "**Cancellation**") was recorded on the Real Estate Records on February 22, 2022 at page 279 of Deed Book 59728, cancelling the Original Security Deed.

31.

A true and correct copy of the Cancellation is attached hereto and incorporated herein by reference as Exhibit "C."

32.

By receiving the Post-Petition Transfer during the pendency of the Bankruptcy Case, despite the Bankruptcy Notice recorded on the Real Estate Records, Rocket has behaved in bad faith, has harmed the Bankruptcy Estate, and has violated the automatic stay of 11 U.S.C. § 362.

33.

By making the Post-Petition Transfer without the consent of the Trustee and the authority of the Bankruptcy Court, Debtor has behaved in bad faith, has harmed the Bankruptcy Estate, and violated the automatic stay of 11 U.S.C. § 362.

17894125v1

34.

Indeed, the Post-Petition Transfer shows the Defendants' cavalier attitude toward the
automatic stay of 11 U.S.C. § 362 and their intentional disregard of this Court's jurisdiction and
authority.

### *f. Reservation of Rights*

35.

During the course of this adversary proceeding, Trustee may learn (through discovery or
otherwise) of additional transfers made to Rocket during any applicable period under the
Bankruptcy Code or other applicable law. It is Trustee's intention to avoid and recover, under
federal and state law, all transfers of any interest of Debtor in property made to or for the benefit
of Rocket or any other transferee, including but not limited to preferential, fraudulent, and other
unauthorized post-petition transfers.   Trustee reserves the right to amend this Complaint to
include: (i) further information regarding the subject transfers, (ii) additional transfers, (iii)
modifications of and/or revision to Defendant Rocket's name, and/or (iv) additional defendants
that may become known to Trustee at any time during this Adversary Proceeding, through
formal discovery or otherwise, and for all such amendments to relate back to the date of filing of
this original Complaint.

## COUNT I

### Defendants' Willful Violation of the Automatic Stay Under 11 U.S.C. § 362(a)(3)

36.

Trustee realleges the allegations of paragraphs 1 through 35 above as though fully set
forth herein.

37.

The Post-Petition Transfer was an act by Defendants to obtain possession or to exercise control over property of the Bankruptcy Estate and to gain an advantage over the Bankruptcy Estate's other creditors and parties in interest.

38.

Upon information and belief, at the time of the Post-Petition Transfer, Defendants had actual knowledge of the Bankruptcy Case.

39.

As a result of Defendants' willful violations of the Automatic Stay, Defendants are liable to Debtor's Bankruptcy Estate for its actual damages incurred plus punitive damages, costs, and attorney's fees pursuant to 11 U.S.C. §§ 105(a) and/or 362(k).

## COUNT II

### Avoidance of Unauthorized Post-Petition Transfer of Property
### Under 11 U.S.C. § 549

40.

Trustee realleges the allegations of paragraphs 1 through 39 above as though fully set forth herein.

41.

The Post-Petition Transfer was a transfer of an interest of Debtor in the Property.

42.

The Post-Petition Transfer was made after the Petition Date.

43.

The Court never entered an order authorizing a transfer of an interest in the Property by Debtor to Rocket.

17894125v1

44.

The Post-Petition Transfer was not authorized by the Bankruptcy Code or order of the Bankruptcy Court.

45.

Trustee may avoid the Post-Petition Transfer under 11 U.S.C. § 549.

## COUNT III.

**Recovery of the Value of the Avoided Post-Petition Transfer Pursuant to 11 U.S.C. § 550(a)**

46.

Trustee hereby realleges the allegations of paragraphs 1 through 45 above as though fully set forth herein.

47.

Defendant Rocket is the initial transferee of an interest in the Property from Debtor.

48.

Plaintiff is entitled to recover from the Defendant Rocket the interest in the Property transferred through the Post-Petition Transfer, or its value, under 11 U.S.C. § 550.

## COUNT IV.

**Preservation of the Avoided Post-Petition Transfer Pursuant to 11 U.S.C. § 551**

49.

Trustee hereby realleges the allegations of paragraphs 1 through 48 above as though fully set forth herein.

50.

Once avoided, the Post-Petition Transfer is automatically preserved for the benefit of the Bankruptcy Estate, pursuant to 11 U.S.C. § 551.

17894125v1

WHEREFORE, Trustee prays that this Court enter a judgment in favor of Trustee and against Defendants:

(a)     holding that the Defendants' above-stated actions were willful violations of the Automatic Stay;

(b)     ordering Defendants to pay to Debtor's Bankruptcy Estate all actual damages, costs, expenses, and attorney's fees pursuant to 11 U.S.C. §§ 105(a) and/or 362(k) in an amount to be proven at trial for their willful violations of the automatic stay;

(c)     ordering Defendants to pay Debtor's Bankruptcy Estate punitive damages pursuant to 11 U.S.C. §§ 105(a) and 362 in an amount to be proven at trial for their willful violations of the automatic stay;

(d)     avoiding the Post-Petition Transfer, pursuant to 11 U.S.C. § 549;

(e)     ordering Defendant Rocket to return to Trustee the interest that it received in the Property to Trustee, or, alternatively, to pay Trustee the value of the Post-Petition Transfer under 11 U.S.C. §550;

(f)     preserving the avoided Post-Petition Transfer for the benefit of the Bankruptcy Estate, pursuant to 11 U.S.C. § 551; and

(g)     granting such other and further relief as is just and proper.

Respectfully submitted this 10th day of March, 2022.

ARNALL GOLDEN GREGORY LLP
*Attorneys for Trustee*

By:   */s/ Michael J. Bargar*
Michael J. Bargar
Georgia Bar No. 645709
michael.bargar@agg.com

171 17th Street, NW, Suite 2100
Atlanta, GA 30363
404-873-7030

17894125v1

EXHIBIT "A" FOLLOWS

DEED B: 58134 P: 00750
12/04/2020 11:19:52 AM Pgs: 4 Fees: $ 25.00
Richard T. Alexander, Jr., Clerk of Superior Court
Gwinnett County, Georgia

Return to:

Michael J. Bargar, Esq.
Arnall Golden Gregory LLP
171 17th Street, NW
Suite 2100
Atlanta, GA 30363-1031

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.  20-70785-BEM |
| | ) | |
| **NOEMI TROCHEZ,** | ) | **CHAPTER 7** |
| | ) | |
| Debtor. | ) | |

Re:    Noemi Trochez
       Land Lot 171 of the 5th District of Gwinnett County
       Lot 62, Block A of Chandler Ridge, Unit One

### NOTICE OF CLAIM OF CHAPTER 7 BANKRUPTCY TRUSTEE
### UNDER 11 U.S.C. SECTION 549(c)

Notice is hereby given that a Petition for Relief under Chapter 7 of the United States Bankruptcy Code was filed in the above-styled case on October 15, 2020. The undersigned Trustee, Michael J. Bargar, hereby claims an interest in any and all property that Noemi Trochez now has or formerly had an ownership interest, legal or equitable, including, but not limited to, the following described property:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 171 OF THE 5TH DISTRICT OF GWINNETT COUNTY, GEORGIA, AND BEING LOT 62, BLOCK A OF CHANDLER RIDGE, UNIT ONE, AS PER PLAT RECORDED IN PLAT BOOK 88, PAGE 202 OF GWINNETT COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

15851403v1

4

SAID PROPERTY KNOWN GENERALLY AS 95 CHANDLER RIDGE LANE, LAWRENCEVILLE, GWINNETT COUNTY, GEORGIA 30045.

This 29th day of November, 2020.

_____
Michael J. Bargar
Chapter 7 Trustee
Ga. Bar No. 302387

ARNALL GOLDEN GREGORY LLP
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363-1031
Telephone: (404) 873-8596

Signed in the presence of:

_____
Unofficial Witness

_____
Notary Public
My Commission expires: 01/18/2022





**Information to identify the case:**

| | | |
|---|---|---|
| Debtor 1 | **Noemi Trochez** | Social Security number or ITIN   xxx-xx-2456 |
| | First Name   Middle Name   Last Name | EIN   __-_____ |
| Debtor 2 (Spouse, if filing) | First Name   Middle Name   Last Name | Social Security number or ITIN   ____ |
| | | EIN   __-_____ |

United States Bankruptcy Court   **Northern District of Georgia**
Court website: www.ganb.uscourts.gov

Date case filed for chapter  7   **10/15/20**

Case number:   **20-70785-bem**

---

Official Form 309A (For Individuals or Joint Debtors)
## Notice of Chapter 7 Bankruptcy Case —— No Proof of Claim Deadline   12/15

**For the debtors listed above, a case has been filed under chapter 7 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read both pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtors' property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

The debtors are seeking a discharge. Creditors who assert that the debtors are not entitled to a discharge of any debts or who want to have a particular debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office within the deadlines specified in this notice. (See line 9 for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at   www.pacer.gov).  Copy fees or access charges may apply. A free automated response system is available at 866-222-8029 (Georgia Northern). You must have case number, debtor name, or SSN when calling.

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.**

**Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | About Debtor 1: | About Debtor 2: |
|---|---|---|
| **1. Debtor's full name** | Noemi Trochez | |
| **2. All other names used in the last 8 years** | aka Noemi Rodriguez | |
| **3. Address** | 95 Chandler Ridge Lane Lawrenceville, GA 30045 | |
| **4. Debtor's attorney** Name and address | E. L. Clark Clark & Washington, LLC Bldg 3 3300 Northeast Expressway Atlanta, GA 30341  Contact phone (404) 522-2222 Email:  ecfnotices@cw13.com | |
| **5. Bankruptcy trustee** Name and address | Michael J. Bargar Arnall Golden Gregory LLP Suite 2100 171 17th Street, NW Atlanta, GA 30363 | Contact phone (404) 873-7030 |

For more information, see page 2 >

Debtor **Noemi Trochez**                                          Case number **20–70785–bem**

| 6. **Bankruptcy clerk's office**<br><br>Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at www.pacer.gov. | M. Regina Thomas<br>Clerk of Court<br><br>1340 United States Courthouse<br>75 Ted Turner Drive SW<br>Atlanta, GA 30303 | Office Hours:  8:00 a.m. – 4:00 p.m.<br><br>Court website: www.ganb.uscourts.gov<br><br>Contact phone 404–215–1000 |
|---|---|---|
| 7. **Meeting of creditors**<br><br>Debtors must attend the meeting to be questioned under oath. In a joint case, both spouses must attend. Bring a copy of this notice with you. Creditors may attend, but are not required to do so. Cellular phones and other devices with cameras are not allowed in the building. | November 16, 2020 at 02:20 PM<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.<br><br>TO THE DEBTOR: Bring an original government issued photo ID and confirmation of social security number. Provide the Trustee a copy of your most recently filed tax return seven days prior to the meeting, but DO NOT FILE WITH THE COURT. | Location:<br><br>**Meeting will be telephonic. To attend, Dial: 866–802–1240 and enter: 7164657, when prompted for participation code.** |
| 8. **Presumption of abuse**<br><br>If the presumption of abuse arises, you may have the right to file a motion to dismiss the case under 11 U.S.C. § 707(b). Debtors may rebut the presumption by showing special circumstances. | The presumption of abuse does not arise. | |
| 9. **Deadlines**<br><br>The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **File by the deadline to object to discharge or to challenge whether certain debts are dischargeable:**<br><br>**You must file a complaint:**<br>• if you assert that the debtor is not entitled to receive a discharge of any debts under any of the subdivisions of 11 U.S.C. § 727(a)(2) through (7), or<br><br>• if you want to have a debt excepted from discharge under 11 U.S.C § 523(a)(2), (4), or (6).<br><br>**You must file a motion:**<br>• if you assert that the discharge should be denied under § 727(a)(8) or (9). | **Filing deadline: 1/15/21** |
| | **Deadline to object to exemptions:**<br>The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | **Filing deadline:** 30 days after the *conclusion* of the meeting of creditors |
| 10. **Proof of claim**<br><br>Please do not file a proof of claim unless you receive a notice to do so. | No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline. | |
| 11. **Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadlines in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
| 12. **Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at www.pacer.gov. If you believe that the law does not authorize an exemption that the debtors claim, you may file an objection. The bankruptcy clerk's office must receive the objection by the deadline to object to exemptions in line 9. | |

Official Form 309A (For Individuals or Joint Debtors) **Notice of Chapter 7 Bankruptcy Case — No Proof of Claim Deadline**                                          page 2

EXHIBIT "B" FOLLOWS

17894125v1

**DEED B: 59690 P: 00580**
02/14/2022 01:38 PM Pgs: 21 Fees: $25.00
ITax: $834.00
Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 3129979105,7067927936

**Return To:**
Document Management
Rocket Mortgage, LLC
1050 Woodward Ave
Detroit, MI  48226-1906

**Prepared By:**
Bill Paterson
1050 Woodward Ave
Detroit, MI 48226-1906
(313)373-0000

Tax Parcel ID:  R5171 405

71970024 -8115610          Security Deed          3496996195

FHA Case No.
106-4132841-703

MIN: 100039034969961954

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A)  **"Security Instrument"** means this document, which is dated  February 9, 2022 , together with all Riders to this document.

(B)  **"Borrower"** is Melvin Trochez, a single man and Noemi Trochez

Borrower is the grantor under this Security Instrument.

6634309310
FHA Security Deed With MERS-GA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

q03496996195 0233 397 0117

9/30/2014
VMP4N(GA) (1506).00
Page 1 of 17

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the grantee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is Rocket Mortgage, LLC, FKA Quicken Loans, LLC

Lender is a Limited Liability Company
organized and existing under the laws of                    the State of Michigan
Lender's address is 1050 Woodward Ave, Detroit, MI  48226-1906

(E) **"Note"** means the promissory note signed by Borrower and dated February 9, 2022 . The Note states that Borrower owes Lender Two Hundred Seventy Seven Thousand Seven Hundred Seventy Seven and 00/100
Dollars (U.S. $ 277,777.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than         March 1, 2052 .

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☒ Planned Unit Development Rider
☒ Other Legal Attached
☐ Rehabilitation Loan Rider

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

FHA Security Deed With MERS-GA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services



q03496996195 0233 397 0217

9/30/2014
VMP4N(GA) (1506).00
Page 2 of 17

DEED B: 59690 P: 00582  02/14/2022 01:38 PM
22D018277  Page 3 of 21

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

County            of        Gwinnett            :
*(Type of Recording Jurisdiction)*            *(Name of Recording Jurisdiction)*

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD..

FHA Security Deed With MERS-GA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

q03496996195 0233 397 0317

9/30/2014
VMP4N(GA)(1506).00
Page 3 of 17

DEED B: 59690 P: 00583  02/14/2022 01:38 PM
22D018277  Page 4 of 21

**Parcel ID Number:** R5171 405                                    which currently has the address of
95 Chandler Ridge Ln                                                      *(Street)*
                    Lawrenceville                    *(City)*, Georgia 30045-6523      *(Zip Code)*
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors
and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or
hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the
property. All replacements and additions shall also be covered by this Security Instrument. All of the
foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that
MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary
to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the
right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the
Property; and to take any action required of Lender including, but not limited to, releasing and canceling this
Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject
to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due
    the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and
    this Security Instrument shall be made in U.S. currency. However, if any check or other instrument
    received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
    Lender may require that any or all subsequent payments due under the Note and this Security Instrument
    be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)
    certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon
    an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic
    Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such
    other location as may be designated by Lender in accordance with the notice provisions in Section 14.
    Lender may return any payment or partial payment if the payment or partial payments are insufficient to
    bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan
    current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or
    partial payments in the future, but Lender is not obligated to apply such payments at the time such
    payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender
    need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes
    payment to bring the Loan current. If Borrower does not do so within a reasonable period of time,
    Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will
    be applied to the outstanding principal balance under the Note immediately prior to foreclosure.

---

FHA Security Deed With MERS-GA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services


q03496996195 0233 397 0417

9/30/2014
VMP4N(GA) (1605).00
Page 4 of 17

DEED B: 59690 P: 00584  02/14/2022 01:38 PM
22D018277  Page 5 of 21

No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.** Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

> First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

> Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

> Third, to interest due under the Note;

> Fourth, to amortization of the principal of the Note; and,

> Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

FHA Security Deed With MERS-GA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services


q03496996195 0233 397 0517

9/30/2014
VMP4N(GA) (1606).00
Page 5 of 17

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that

---

FHA Security Deed With MERS-GA
Bankers SystemsᵀᴹVMP ®
Wolters Kluwer Financial Services



q03496996195 0233 397 0617

9/30/2014
VMP4N(GA) (1506).00
Page 6 of 17

Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

FHA Security Deed With MERS-GA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services



q03496996195  0233  397  0717

9/30/2014
VMP4N(GA) (1506).00
Page 7 of 17

DEED B: 59690 P: 00587 02/14/2022 01:38 PM
22D018277 Page 8 of 21

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

FHA Security Deed With MERS-GA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

q03496996195 0233 397 0817

9/30/2014
VMP4N(GA) (1606).00
Page 8 of 17

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

FHA Security Deed With MERS-GA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services


q03496996195 0233 397 0917

9/30/2014
VMP4N(GA) (1505).00
Page 9 of 17

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in, the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

FHA Security Deed With MERS-GA
Bankers System™ VMP ®
Wolters Kluwer Financial Services



q03496996195 0233 397 1017

9/30/2014
VMP4N(GA)(1606).00
Page 10 of 17

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

13. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

FHA Security Deed With MERS-GA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services


q03496696195 0233 397 1117

9/30/2014
VMP4N(GA) (1506).00
Page 11 of 17

15. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

16. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money

FHA Security Deed With MERS-GA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services



q03496996195 0233 397 1217

9/30/2014
VMP4N(GA) (1506).00
Page 12 of 17

DEED B: 59690 P: 00592  02/14/2022 01:38 PM
22D018277  Page 13 of 21

order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

FHA Security Deed With MERS-GA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services



q03496996195 0233 397 1317

9/30/2014
VMP4N(GA) (1506).00
Page 13 of 17

DEED B: 59690 P: 00593  02/14/2022 01:38 PM
22D018277  Page 14 of 21

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

FHA Security Deed With MERS-GA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services



9/30/2014
VMP4N(GA) (1506).00
Page 14 of 17

q03496996195 0233 397 1417

DEED B: 59690 P: 00594  02/14/2022 01:38 PM
22D018277  Page 15 of 21

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

25. **Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. **Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

27. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

FHA Security Deed With MERS-GA
Bankers System™  VMP ®
Wolters Kluwer Financial Services



9/30/2014
VMP4N(GA) (1506).00
Page 15 of 17

q03496996195 0233 397 1517

DEED B: 59690 P: 00595 02/14/2022 01:38 PM
22D018277 Page 16 of 21

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____  02/09/2022  (Seal)
Melvin Trochez                              -Borrower

_____  02/09/2022  (Seal)
Noemi Trochez                              -Borrower

_____            (Seal)
                                            -Borrower

_____            (Seal)
                                            -Borrower

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

FHA Security Deed With MERS-GA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

q03496996195 0233 397 1617

9/30/2014
VMP4N(GA) (1506).00
Page 16 of 17

DEED B: 59690 P: 00596  02/14/2022 01:38 PM
22D018277  Page 17 of 21

**Acknowledgment**

Signed, sealed and delivered in the presence of:

(Unofficial Witness)    RoLANdo TRooHER

Notary Public

State of Georgia

My commission expires: 2/18/2028

**Loan Origination Organization:** Rocket Mortgage, LLC
**NMLS ID:** 3030
**Loan Originator:** Katherine Gregor
**NMLS ID:** 324031

FHA Security Deed With MERS-GA
Bankers System℠ VMP ®
Wolters Kluwer Financial Services



9/30/2014
VMP4N(GA) (1506).00
Page 17 of 17

q03496996195 0233 397 1717

DEED B: 59690 P: 00597  02/14/2022 01:38 PM
22D018277  Page 18 of 21

3496996195

## Planned Unit Development Rider

MERS MIN: 100039034969961954

| FHA Case No. |
| 106-4132841-703 |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 9th day of February, 2022, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
Rocket Mortgage, LLC, FKA Quicken Loans, LLC

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

95 Chandler Ridge Ln
Lawrenceville, GA 30045-6523
(Property Address)

The Property Address is a part of a planned unit development ("PUD") known as
Chandler Ridge

(Name of Planned Unit Development)

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

6634309334
FHA PUD Rider
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

q03496996195 0265 399 0103

September 2014
VMP589U (1502).00
Page 1 of 3

DEED B: 59690 P: 00598  02/14/2022 01:38 PM
22D018277  Page 19 of 21

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

FHA PUD Rider
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

q03496996195 0265 399 0203

September 2014
VMP589U (1502).00
Page 2 of 3

DEED B: 59690 P: 00599  02/14/2022 01:38 PM
22D018277  Page 20 of 21

By signing below, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____  02/09/2022 ___ (Seal)
Melvin Trochez                                    -Borrower

_____  02/09/2022 ___ (Seal)
Noemi Trochez                                     -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

☐ Refer to the attached Signature Addendum for additional parties and signatures.

FHA PUD Rider                                              September 2014
Bankers Systems™ VMP ®                                    VMP589U (1502).00
Wolters Kluwer Financial Services    q03496996195 0265 399 0303        Page 3 of 3

## EXHIBIT A - LEGAL DESCRIPTION

Tax Id Number(s): R5171 405

Land situated  in the County of Gwinnett in the State of GA

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 171 OF THE 5TH DISTRICT, OF
GWINNETT COUNTY. GEORGIA, AND BEING LOT 62, BLOCK A OF CHANDLER RIDGE, UNIT ONE, AS PER
PLAT RECORDED IN PLAT BOOK 88, PAGE 202 OF GWINNETT COUNTY, GEORGIA RECORDS, WHICH
PLAT IS INCORPORATED HEREIN AND MADE A PART HEREOF BY REFERENCE.

Commonly known as:   95 Chandler Ridge Ln, Lawrenceville, GA 30045-6523

THE PROPERTY ADDRESS AND TAX PARCEL IDENTIFICATION NUMBER LISTED ARE PROVIDED SOLELY FOR
INFORMATIONAL PURPOSES.

# EXHIBIT "C" FOLLOWS

DEED B: 59728 P: 00279
02/28/2022 09:44 AM Pgs: 1 Fees: $25.00

Tiana P Garner, Clerk of Superior Court
Gwinnett County, GA

ERECORDED
eFile Participant IDs: 5224125492,7067927936

When Recorded Return To:
MELVIN TROCHEZ
95 CHANDLER RIDGE LN
LAWRENCEVILLE, GA 30045

Loan No 0118408566

## CANCELLATION OF DEED TO SECURE DEBT
(Cancellation of Security Deed)

STATE OF GEORGIA
COUNTY OF GWINNETT

The indebtedness referred to in that certain Deed to Secure Debt from MELVIN TROCHEZ AND NOEMI TROCHEZ to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR MOVEMENT MORTGAGE LLC, ITS SUCCESSORS AND ASSIGNS dated 10/10/2014, and recorded in Deed **Book 53189 and Page 0742** in the office of the Clerk of Superior Court of GWINNETT County, **Georgia**, having been acknowledged as paid in full and the undersigned being the present lienholder of such secured interest by virtue of being the original grantee or the heir, assign, transferee, or devisee of the original grantee, the clerk of such superior court is authorized and directed to cancel that deed of record as provided in Code Section 44-14-4 of the O.C.G.A. for other Mortgage cancellations.

Property is commonly known as: 95 CHANDLER RIDGE LANE, LAWRENCEVILLE, GA 30045.

**Dated this 28th day of February in the year 2022.**
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS GRANTEE, AS NOMINEE FOR MOVEMENT MORTGAGE LLC, ITS SUCCESSORS AND ASSIGNS

By: 

SIERRA ELLIOTT
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

Signed and delivered in the presence of:

WENDELL BAUGHMAN III
WITNESS

STATE OF FLORIDA   COUNTY OF PINELLAS

I hereby attest that I was present and acknowledged the execution of the foregoing instrument, done before me by means of [X] physical presence or [ ] online notarization on this 28th day of February in the year 2022, by Sierra Elliott as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS GRANTEE, AS NOMINEE FOR MOVEMENT MORTGAGE LLC, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



JULIE MARTENS
COMM EXPIRES: 5/22/2022

JULIE MARTENS
Notary Public - State of Florida
Commission # GG 221059
My Comm. Expires May 22, 2022
Bonded through National Notary Assn.

Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
FM001 430987859 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)   MIN 1006708000118458885 MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026  DOCR T282202-12:16:15 [C-1]  ERCNGA5

*D0091387800*